FILED

2004 JAN -5  A 10: 10

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

SALVATORE CLAPPER         :

VS.                       :                NO. 3:02CV1522(JCH)
                          :
REGISTERED NURSE COLLEEN (LNU),   :
REGISTERED NURSE BUJNEVECIE,      :
CORRECTIONAL OFFICER GALINISKI    :
and CORRECTIONAL OFFICER LINDSAY  :   DECEMBER 31, 2003


## PLAINTIFF'S TRIAL MEMORANDUM


**(1)   TRIAL COUNSEL**

John R. Williams
Norman A. Pattis
Timothy J. Mahoney
Christy H. Doyle
Elizabeth Brooks
Williams and Pattis, LLC
51 Elm Street
New Haven, CT 06510
203.562.9931
Fax: 203.776.9494
E-Mail: jrw@johnrwilliams.com

1

**(2) JURISDICTION**

The basis for the court's subject matter jurisdiction is Sections 1331, 1343(3) and 1367(a) of Title 28 and Sections 1983 and 1988 of Title 42 of the United States Code.

**(3) JURY-NONJURY**

This is a jury case.

**(4) NATURE OF CASE**

This is an action for deliberate indifference to serious medical needs, brought by a former sentenced inmate against responsible personnel of the Connecticut Department of Correction in their individual capacities.

**(5) STIPULATIONS OF FACT AND LAW**

1. During all times mentioned in this action, the plaintiff was an adult citizen of the United States residing in Torrington, Connecticut. During the times herein described, he was an inmate in the custody of the Connecticut Commissioner of Correction imprisoned at the Northern Correctional Institution in Somers, Connecticut, in Housing Unit 3-West, Cell number 124.

2. During all times mentioned in this action, the defendants and each of them were employees of the Connecticut Department of Correction assigned to

the Northern Correctional Institution and acting in their official capacities. They are sued, however, only in their individual capacities.

3. During all times mentioned in this action, the defendants were acting under color of law, that is, under color of the constitution, statutes, laws, rules, regulations, customs and usages of the State of Connecticut.

4. Defendant Bujnevecie was a registered nurse on duty from 11:00 p.m. on November 3, 2000, to 7:00 a.m. on November 4, 2000.

5. Defendant Galiniski was a correctional officer on duty during the 3:00 p.m. to 11:00 p.m. shift on November 3 and 4, 2000.

6. Defendant Lindsay was a correctional officer on duty during the 3:00 p.m. to 11:00 p.m. shift on November 4, 2000.

7. During the morning of November 5, 2000, another nurse came on duty and immediately recognized the plaintiff's symptoms. She promptly summoned assistance and the plaintiff was transported by ambulance to the John Dempsey Hospital at the University of Connecticut Health Center in Farmington where the plaintiff underwent emergency surgery.

8. The plaintiff had ruptured acute appendicitis with generalized peritonitis.

9. The plaintiff suffered pain.

10. The plaintiff filed a grievance with respect to his ruptured acute

appendicitis..

11. The plaintiff subsequently was discharged from custody and is no longer an inmate.

**(6)    PLAINTIFF'S CONTENTIONS**

The plaintiff contends that he suffered severe agony for a period of days, during which he repeatedly called upon the defendants to help him. During that time the defendants refused him medical attention. By the time the plaintiff finally received treatment, the delay in furnishing that treatment had caused his appendix to rupture, peritonitis to set in, and as a result the plaintiff suffered severe and unnecessary pain, agony and fear.

**(7)    DEFENDANTS' CONTENTIONS**

The defendants deny that their acts and/or omissions constituted deliberate indifference to the plaintiff's serious medical needs within the meaning of the Eighth Amendment.

**(8)    LEGAL ISSUES**

Did the acts and omissions of the defendants constitute deliberate indifference to the plaintiff's serious medical needs, in violation of the Eighth Amendment to the United States Constitution as enforced through Sections

1983 and 1988 of Title 42 of the United States Code?

**(9)  VOIR DIRE QUESTIONS**

1. This is a lawsuit for civil rights violations brought by a former prison inmate against employees of the Connecticut Department of Correction. Is there any reason why you would have difficulty being completely neutral and fair in deciding this case if you are chosen to serve on the jury?

2. Is there anyone here who would prefer not to sit on a jury concerning a case of this kind?

3. Does anyone here feel for any reason that prison inmates who believe that they have been treated illegally and unfairly should not bring suit against the prison employees responsible? If so, please explain.

4. Have you or anyone close to you ever been employed in a prison or a jail or by any law enforcement agency in any capacity? If so, please explain.

5. Have you or anyone close to you ever been employed by any agency of state or local government in the State of Connecticut?

6. Has anyone here or anyone close to you ever been employed by any other Governmental unit outside of the State of Connecticut?

7. Do you know or have you read anything or heard anything about this case, the plaintiff or the defendants or any of the lawyers involved in the case?

8. Has anyone here ever served as an appointed or elected official of state, city or local Government?

9. Has anyone here or anyone close to you ever been involved in any political campaigns or elections in the State of Connecticut?

10. Has anyone here or any close to you ever been employed by an attorney?

11. Would you for any reason tend to favor one side or the other in this case or in regard to the evidence which may be presented?

12. Other things being equal, would you tend to trust or believe the testimony of a prison employee more or less than that of an ordinary citizen merely because the testimony came from a prison employee?

13. Does anyone here have any feeling that the plaintiff, simply because he was a sentenced prison inmate at the time of the events in question, does not stand equally before the law in this courtroom?

14. Have you or anyone close to you ever been the victim of a crime?

15. Have you, or has anyone close to you, ever been a party to a lawsuit? If so, please explain.

16. Where are you employed?

6

**(10)   LIST OF WITNESSES**

1. The plaintiff will testify concerning all allegations in his complaint.

2. Defendant Colleen will testify concerning her activities in relation to the plaintiff.

3. Defendant Bujnevecie will testify concerning her activities in relation to the plaintiff.

4. Defendant Galiniski will testify concerning this defendant's activities in relation to the plaintiff.

5. Defendant Lindsay will testify concerning this defendant's activities in relation to the plaintiff.

6. David Giles, M.D., will testify concerning the treatment of the plaintiff.

**(11)   EXHIBITS**

1. Applicable prison records.

2. John Dempsey Hospital records.

3. Plaintiff's grievances and responses thereto.

**(12)   DEPOSITION TESTIMONY**

None.

### (13) REQUESTS FOR JURY INSTRUCTIONS

1. The plaintiff has brought this lawsuit to obtain redress for what he contends were violations of his rights under the United States Constitution, specifically his right as a state prisoner to be free from deliberate indifference to his serious medical needs. Federal law provides that any individual may seek redress in this Court, by way of money damages, against any person or persons who, under color of State law, deprive that individual of any of his constitutional rights. "Acting under color of law" means "under pretense of law," and simply means acting in one's capacity as, in this case, employees of the Connecticut Department of Correction. In this case, the defendants have admitted that they were acting under color of law, so you need not concern yourselves with that issue. [Monroe v. Pape, 365 U.S. 167 (1961); Pitchell v. Callan, 13 F.3d 545 (2d Cir. 1994); Conner v. Donnelly, 42 F.3d 220 (4th Cir. 1994); Stengel v. Belcher, 522 F.2d 438, 441 (6th Cir. 1975).]

2. It is not necessary to find that the defendants had any specific intent to deprive the plaintiff of his civil rights in order to find in favor of the plaintiff. The plaintiff is entitled to win this case if the defendants acted in reckless disregard of the plaintiff's rights. Reckless disregard of the plaintiff's rights simply means not caring whether or not those rights were being violated. [Merriwether v. Coughlin, 879 F.2d 1037 (2d Cir. 1989); Bordanaro v. McLeod,

871 F.2d 1151, 1164 (1st Cir. 1989); <u>Stengel v. Belcher</u>, 522 F.2d 438 (6th Cir. 1975); <u>Gregory v. City of Rogers</u>, 921 F.2d 750, 755-57 (8th Cir. 1990) (Timbers, J.); <u>Wood v. Ostrander</u>, 879 F.2d 583 (9th Cir. 1989); <u>Caballero v. City of Concord</u>, 956 F.2d 204 (9th Cir. 1992); <u>Presnick v. Santoro</u>, 832 F. Supp. 521, 528 (D. Conn. 1993) (Cabranes, J.).]

    3. The testimony of a public official or state employee is entitled to no special or exclusive sanctity. An state employee who takes the witness stand subjects his or her testimony to the same examination and the same tests that any other witness does. You should recall their demeanor on the stand, their manner of testifying, the substance of their testimony, and weigh and balance it just as carefully as you would the testimony of any other witness. People employed by the government do not stand in any higher station in the community than other persons, and their testimony is not entitled to any greater weight. [Wright & Havanich, <u>CONN. JURY INSTRUCTIONS</u>, (2d Ed.) §667.]

    4. If you find that the defendants are liable to the plaintiff on any of the grounds advanced in this lawsuit, you should then consider the question of damages. There are essentially two kinds of damages which can be awarded in a lawsuit -- compensatory damages and punitive damages. Compensatory damages are designed to compensate the plaintiff for injuries suffered by the plaintiff. These injuries include physical and mental pain and other suffering. In

fixing compensatory damages you should determine the amount of money which will, in your judgment, reasonably and fairly compensate the plaintiff for any harm of any kind which was proximately caused by the wrongful conduct of the defendants. Among the elements of injury and harm for which compensation may be awarded are:

    a) The physical harm to the plaintiff during and after the impairment or injury received, including imprisonment and loss of freedom;

    b) The emotional harm to the plaintiff during and after the impairment or injury received, including emotional distress or pain, humiliation, personal indignity, embarrassment, fear, anxiety and/or anguish which the plaintiff has suffered or may with reasonable certainty be expected to suffer in the future;

    c) Medical bills or expenses.

Actual loss is not limited to expenses or debts incurred. Injuries of any kind are to be fully and fairly compensated if they are proximately caused by the constitutional violation. You should award damages in such a case to the extent that the loss or injury can be reasonably quantifiable and not simply on the basis of the inherent value of the rights violated. The damages you award should be proportional to the actual loss sustained, whether that loss is physical or mental or emotional or one of the other types of loss I have previously discussed with you. [Memphis Community School District v. Stachura, 477 U.S. 299 (1986);

Wheatley v. Beetar, 637 F.2d 863, 865-68 (2d Cir. 1981); Ellis v. Blum, 643 F.2d 68, 82-84 (2d Cir. 1981); Walters v. City of Atlanta, 803 F.2d 1135 (11th Cir. 1986); Johnson v. Franklin, 112 Conn. 228, 229, 152 Atl. 64 (1930); Childs v. Bainer, 35 Conn. App. 301, 304 (1994); Creem v. Cicero, 12 Conn. App. 607, 611, 533 A.2d 234 (1987); Jeffries v. Johnson, 27 Conn. App. 471, 476, 607 A.2d 443 (1992).]

    5. You may also decide whether the plaintiff is entitled to the award of any punitive damages. In a case like this one, you may consider whether acts or omissions of any defendant, if you find them to have been proved, were so serious that the defendant should pay a penalty so that in the future others will be deterred from engaging in the same conduct. Whether you decide to award any punitive damages should be based on whether you find that the defendant engaged in any one of the following things:

    1) Willful or malicious violation of the constitutional rights of the plaintiff;

    2) Any intentional act by the defendant in gross disregard of the rights of the plaintiff;

    3) Reckless disregard by the defendant of whether or not he was violating the rights of the plaintiff.

If you find any one of these three things to have been proven, then you should award punitive damages. [Smith v. Wade, 461 U.S. 30 (1983); Stolberg v. Board

11

of Trustees, 474 F.2d 489 (2d Cir. 1973); McFadden v. Sanchez, 710 F.2d 907 (2d Cir. 1983); Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989); Larez v. City of Los Angeles, 946 F.2d 630, 648-49 (9th Cir. 1991); Wright v. Sheppard, 919 F.2d 665, 670-73 (11th Cir. 1990).]

    6. The purpose of punitive damages awards is both punishment and deterrence, and in deciding whether to award punitive damages and, if so, fixing the amount of such damages, the jury acts as the conscience of the community. In fixing the amount of punitive damages, it is appropriate for the jury to consider all of the same factors which a trial judge would consider in imposing sentence in a criminal case. These factors include the behavior of the defendant at trial and his or her apparent lack of genuine repentance for the misconduct in question, if you find such to be the case. [Hall v. Ochs, 817 F.2d 920 (1st Cir. 1987); Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194 (1st Cir. 1987); O'Neill v. Krzeminski, 839 F.2d 9 (2d Cir. 1988); Zarcone v. Perry, 572 F.2d 52 (2d Cir. 1978).]

    7. When two or more persons unite in an act which constitutes a wrong to another, intending at the time to commit it, or performing it under circumstances which fairly charge them with intending the consequences which follow, they incur a joint and several liability for the acts of each and all of the joint participants. The law does not require the injured party to establish how

much of the injury was done by one person and how much of the injury was done by another. Rather, it permits the injured party to treat all concerned in the injury jointly and all are liable to respond to the plaintiff in a total sum as damages. All those who actively participate in a wrongful act, by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts for their benefit, are equally liable with him. Express agreement is not necessary, and all that is required is that there should be a common design or understanding, even though it be a tacit one. [Prosser, Law of Torts, Section 46, pp. 291-95 (4th Ed. 1971); Gagnon v. Ball, 696 F.2d 17 (2d Cir. 1982).]

    8. Conduct of a defendant, including statements knowingly made and acts knowingly done after an allegedly wrongful act, may be considered by the jury in the light of all other evidence in the case in determining whether or not the defendant has acted wrongfully. When a defendant voluntarily and intentionally offers an explanation, or makes some statement tending to show his innocence, and this explanation or statement is later shown to be false, the jury may consider whether this circumstantial evidence points to a consciousness of wrongdoing. Ordinarily, it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence. Whether or not evidence as to a defendant's voluntary explanation or statement points to a consciousness of wrongdoing or a

consciousness of guilt, and the significance to be attached to any such evidence, are matters exclusively within the province of the jury. A statement or act is "knowingly" done, it made or done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. [Fernandez v. Fitzgerald, 711 F.2d 485 (2d Cir. 1983); United States v. McDougald, 650 F.2d 532 (4th Cir. 1982); Government of Virgin Islands v. Testamark, 570 F.2d 1162 (3d Cir 1978); United States v. Barresi, 601 F.2d 193 (5th Cir. 1979); United States v. Wood, 550 F.2d 435 (9th Cir. 1976); Opper v. United States, 348 U.S. 84, 92 (1954); Wilson v. United States, 162 U.S. 613, 620-21 (1896); United States v. DeAlesandro, 361 F.2d 694, 697-98 (2d Cir. 1966), cert. denied, 385 U.S. 842 (1967).]

9. "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." [Turney v. Safley, 482 U.S. 78, 84 (1987)] "No static test exists that measures whether conditions of confinement are cruel and unusual, for the Eighth Amendment draws its meaning from the 'evolving standards of decency that mark the progress of a maturing society.'" [Rhodes v. Chapman, 452 U.S. 337, 346 (1981); Talib v. Gilley, 138 F.3d 211, 214 (5th Cir. 1998).] "As a general matter, it is sufficient to show that a prison official acted with 'deliberate indifference' to prisoners' health or safety....The deliberate indifference standard does not require a showing 'that a prison official acted or

14

failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" [Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999). *Cf.*, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).]

10. Denial of medical treatment when an inmate has serious medical needs is a violation of the Eighth Amendment's prohibition on cruel and unusual punishment. [Chance v. Armstrong, 143 F.3d 698 (2d Cir. 1998) (failure to provide adequate dental care, resulting in pain, inability to chew properly, and consequent extraction of a tooth); Koehl v. Dalsheim, 85 F.3d 86 (2d Cir. 1996) (Newman, C.J.) (denial of eyeglasses needed to treat serious eye condition); Hathaway v. Coughlin, 37 F.3d 63 (2d Cir. 1994); Austin v. Johnson, 328 F.3d 204 (5th Cir. 2003) (two-hour delay in summoning medical treatment for unconscious inmate suffering from heat stroke); Harris v. Hegmann, 198 F.3d 153 (5th Cir. 1999) (ignoring requests for immediate treatment of broken jaw); Ralston v. McGovern, 167 F.3d 1160 (7th Cir. 1999) (guard's refusal to give inmate medication prescribed to alleviate pain caused by radiation treatment for Hodgkin's disease); Reed v. McBride, 178 F.3d 849 (7th Cir. 1999) (denial of life-sustaining medication previously prescribed by outside physician); Roberson v. Bradshaw, 198 F.3d 645 (8th Cir. 1999) (prison doctor continued to prescribe medication despite knowledge that inmate was suffering adverse reaction to it);

Cooper v. Schriro, 189 F.3d 781 (8th Cir. 1999) (denial of dental treatment for painful cracked and decayed teeth); Miller v. Schoenen, 75 F.3d 1305 (8th Cir. 1996); Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) (intentional interference with previously prescribed medical treatment); Wakefield v. Thompson, 177 F.3d 1160 (9th Cir. 1999) (denial to discharging inmate of a sufficient supply of prescription psychotropic medication to sustain him until he could get a new prescription on the outside); Hunt v. Uphoff, 199 F.3d 1220 (10th Cir. 1999) (inadequate treatment of diabetes and hypertension); Brown v. Zavaras, 63 F.3d 967 (10th Cir. 1995) (denial of treatment for gender dysphoria); Steele v. Shah, 87 F.3d 1266 (11th Cir. 1996); Harris v. Coweta County, 21 F.2d 388 (11th Cir. 1994); Howard v. Headly, 72 F. Supp. 2d 118 (E.D.N.Y. 1999) (Block, J.) (prison officials required inmate to perform sanitation duties despite physician's orders to the contrary).] Delay in providing care is itself a violation of the constitution. [Estate of Rosenberg v. Crandell, 56 F.3d 35 (8th Cir. 1995) (fatal delay in treating esophageal carcinoma); Boyd v. Knox, 47 F.3d 966 (8th Cir. 1995) (three-week delay in treating infected wisdom tooth); Patterson v. Pearson, 19 F.3d 439 (8th Cir. 1994).]

    11. A medical need does not have to be life-threatening in order to constitute a "serious medical need". "We will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a

sentence that required the inmate to submit to such pain. We do not, therefore, require an inmate to demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do we require a showing that his or her condition will degenerate into a life-threatening one." [Brock v. Wright, 315 F.3d 158, 163 (2d Cir. 2002) (refusal to treat a painful keloid scar at the site of a knife wound); Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir. 2000) (protracted delay in treating decayed tooth).]

12. To succeed in his constitutional claim, the plaintiff must demonstrate that the medical deprivation was objectively serious and that prison officials subjectively knew about the deprivation and refused to remedy it. [Drowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997)] A medical need is serious if it is 'obvious to the layperson or supported by medical evidence. [Moore v. Jackson, 123 F.3d 1082, 1086 (8th Cir. 1997)] "The standard for establishing an Eighth Amendment violation based on deliberate indifference to a prisoner's medical needs contains both an objective and a subjective prong. 'Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists. Subjectively, the charged official must act with a sufficiently culpable state of mind.' The required state of mind is that the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" [Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998), quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).]

**(14) ANTICIPATED EVIDENTIARY PROBLEMS**

None.

**(15) PROPOSED FINDINGS AND CONCLUSIONS**

Not applicable.

**(16) TRIAL TIME**

Two days.

**(17) FURTHER PROCEEDINGS**

None. However, since most of the relevant facts in this matter are admitted, this case might profit from a settlement conference.

**(18) ELECTION FOR TRIAL BY MAGISTRATE**

No objection.

THE PLAINTIFF

BY: _____
JOHN R. WILLIAMS (ct00215)
Williams and Pattis, LLC
51 Elm Street
New Haven, CT 06510
203.562.9931
Fax: 203.776.9494
E-Mail: jrw@johnrwilliams.com
His Attorney

CERTIFICATION OF SERVICE

On the date above stated, a copy hereof was mailed to Richard T. Couture, Esq., Assistant Attorney General, 110 Sherman Street, Hartford, CT 06105.

_____
JOHN R. WILLIAMS